1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

ERIK C. STONEBRAKER,                         )
                                             )
                          Plaintiff,         )         Case No. 2:13-cv-01238-APG-GWF
                                             )
vs.                                          )         **FINDINGS AND**
                                             )         **RECOMMENDATION**
SOCIAL SECURITY ADMINISTRATION,              )
                                             )
                          Defendant.         )
_____)

        This matter is before the Court on Plaintiff Erik C. Stonebraker's Complaint for Review of
Final Decision of the Commissioner of Social Security (#2), filed on July 25, 2013.  The Acting
Commissioner filed her Answer (#11) on September 30, 2013.  Plaintiff filed his Motion for
Remand and/or Reversal (#14) on October 31, 2013.  The Acting Commissioner filed her Cross
Motion to Affirm (#15) on December 2, 2013.  Plaintiff filed his Reply Brief (#16) on December
20, 2013.

## BACKGROUND

        A.        **Procedural History.**

        Plaintiff filed an application for a period of disability and disability insurance benefits on
June 15, 2009, alleging that he became disabled on July 1, 2008.  *See* Administrative Record
("AR") 108-109.  The Commissioner denied Plaintiff's application initially on April 7, 2010, AR
64-67, and upon reconsideration on July 2, 2010.  AR 69-71.  Plaintiff requested a hearing before
an Administrative Law Judge ("ALJ").  AR 72-73.  The hearing was conducted on August 3, 2011
at which Plaintiff appeared and testified.  AR 39-56.  The ALJ issued his decision on September
21, 2011 and concluded that Plaintiff was not disabled from July 1, 2008 through the date of the
decision.  AR 28-34.  Plaintiff's request for  review by the Appeals Council was denied on May 14,

2013.  AR 1-7.  Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).  This matter has been referred to the undersigned magistrate judge for a report of findings and recommendations pursuant to 28 U.S.C. §§ 636 (b)(1)(B) and (C).

**B.    Factual Background.**

Plaintiff Erik C. Stonebraker was born on January 27, 1968.  He was 43 years old at the time of the hearing before the ALJ on August 3, 2011.  Plaintiff graduated from high school in 1986 and completed real estate school in 1991.  AR 137-138.  Plaintiff is married and has three children who were 17, 13 and 11 years old at the time of the hearing.  AR 48.

**1.    Plaintiff's Disability Reports, Work History Report and Hearing Testimony.**

Plaintiff alleges that he became disabled on July 1, 2008 due to severe asthma, bronchitis and high blood pressure.  *See* Disability Report-Adult-Form SSA-3368.  AR 130.  Plaintiff reported that he had been hospitalized many times for asthma, lung infections and pneumonia.  He took four or more breathing treatments daily and was taking high blood pressure medication which caused him to get very tired.  He reported that he had several asthma attacks in a month and his physician Dr. Prabhu had declared him disabled.  AR 130.

Plaintiff was employed as a real estate property manager from 1990 to 2000.  AR 140.  In this job, he managed office employees, supervised and instructed maintenance workers, worked with insurance companies, leased vacant rentals, dealt with tenant complaints/concerns, acquired new business, inspected leased and vacant properties, and collected rent.  AR 144.  From 1999 to 2005, he was employed as a piano teacher.  AR 140, 143.  From July 2005 until April 2007, Plaintiff was employed as an office manager for a real estate business.  AR 140.  He trained employees, made ads, spoke on the telephone, did filing, typing, correspondence, tracked sales and leads, and copied legal documents.  AR 142.  Plaintiff worked as an indexer from June 8, 2007 to March 27, 2008.  Plaintiff reported that all of these jobs required speaking, walking and other bodily movements which he could not do without getting out of breath or coughing.  He stated that these tasks caused him to use up what little energy he had and he ended up having asthma attacks.  AR 149.

2

1    During the August 3, 2011 hearing, Plaintiff described his last job as a realtor's assistant.

2   He worked in this job during two periods; the first for two years and the second for four weeks.  He

3   last worked in May 2008.  AR 42.  Plaintiff testified that he stopped working because the company

4   "went under" and his asthma was getting worse.  He did not have insurance and was not able to get

5   medicine.  AR 43.  Plaintiff testified that he looked for other similar jobs and had five job

6   interviews in 2008, but did not get hired.  Plaintiff testified that he would have gone to work if

7   someone would have hired him.  AR 44.

8    Plaintiff was asked whether he thought he could still do an office job.  He answered no,

9   stating that he constantly has to do breathing treatments.  His asthma attacks occur all day long. The

10  physical requirement of a realtor office job would require too much getting up and down,

11  performing errands and going to the filing cabinet.  He stated that speaking on the telephone would

12  be difficult because constant talking aggravates his asthma.  While working in a prior clerical job,

13  the exposure to paper dust affected his lungs and caused him to fill up with mucus.  AR 44-45.

14  Plaintiff also testified that on windy days he wears a mask if he goes out.  He is also bothered by

15  strong fumes, such as cleaning products, perfume, or hand lotions.  AR 51.  Under questioning by

16  his counsel, Plaintiff testified that if he had gotten one of the jobs he applied for, he does not

17  believe he could have performed it.  AR 51.  He stated that he would need to take three or four

18  additional breaks during the work day to do his breathing treatments.  AR 52.

19   Plaintiff testified that he can lift no more than a gallon of milk.  He can stand for five

20  minutes and walk for five minutes.  AR 44-45.  Sitting is not an issue, but his ankles throb and

21  swell and he has to keep them elevated.  AR 46.  Talking more than 15 minutes causes him to have

22  shortness of breath.  Walking more than 5 minutes, or bending over also causes shortness of breath.

23  He cannot use stairs.  He also no longer plays the piano because he gets tightness after 10-15

24  minutes.  AR 50.

25   Plaintiff described a typical day for him as follows:  He wakes up between 4:00 and 6:00

26  a.m.  His lungs are severely tight when he awakens and he has to do a breathing treatment,

27  sometimes two.  (On the day of the hearing, he did four breathing exercises between 6:30 and 10:30

28  a.m.)  After doing his breathing treatment he drinks some juice and relaxes for a couple of hours.

He then takes a shower and cleans up.  He sits on a stool in the shower.  The shower causes moisture to build up in his apartment which causes him breathing difficulty.  He stays inside most of the day unless he has to go pick-up a prescription.  He also goes to the store to pick up small items, but for larger grocery shopping his children go with him to assist.  He cooks food for his children, making sandwiches or items in the crockpot so that he does not have to stand and cook.  AR 46.  His daughter does the dishes and his son takes out the trash and vacuums.  After dinner he relaxes. AR 47.

Plaintiff testified that he watches television, and does some reading.  He has a computer, but his children use it more than he does.  He will use the computer to check emails.  He also texts on his cellphone.  AR 47-48.  Plaintiff testified that he tries to go to the mall "but I don't go very far."  He and his family go to church every Sunday from 8:30 to 10:00 a.m.  He states that by 10:00, he has to do a breathing treatment.  Id.  He lives in an apartment, so there is no yard work.  He does not attend school functions for his children.  AR 48.

Plaintiff does breathing exercises throughout the day, normally one every three hours.  He does a minimum of six to seven breathing treatments per day, including one during the middle of the night.  AR 49.  Each exercise takes about 10-15 minutes.  AR 47.  The medication causes him to shake and it takes 15 to 20 minutes for the shaking to subside.  The medication will sometimes wipe him out and he will sleep for about 30 minutes.  AR 47.  He takes his breathing machine with him wherever he goes, because once he starts to get tight he needs to do a breathing treatment immediately.  If he does not do so, he will get tighter and it may then "take two or three more treatments to get me loosened up."  AR 50.  Plaintiff also uses inhalers, but they do not work well for him.  AR 49.

## 2.    Medical Records.

Plaintiff's records state that he is 6'2" tall and has weighed between 230 and 243 pounds.  According to the records, his weight has fluctuated up and down.

Plaintiff was seen at the University Medical Center Ambulatory Care facility on July 25, 2007 for chronic rhinitis, AR 219-22; on October 14, 2007 for productive cough and fever, with a history of asthma and pneumonia, AR 215-18; and on October 28, 2007 for cough and congestion,

4

1  AR 211-14.  Plaintiff was under the care of R.D. Prabhu-Lata K. Shete, M.D.'s Ltd. (hereinafter

2  "Prabhu clinic") from November 12, 2007 to May 18, 2009.  AR 223-249.  The initial record

3  indicates that Plaintiff was seen for follow-up on lab work and his request for allergy testing.  His

4  physical examination on November 12th appeared to be unremarkable.  AR 223-24.  He was seen

5  on November 28, 2007 for a flare-up of his asthma with difficulty breathing and productive cough.

6  At that time, he was continued on his current medications, including Advair 500/50 mcg,

7  Combivent MDI, and albuterol nebulizers.  He was prescribed additional medication and scheduled

8  for follow-up in two weeks.  AR 226-28.

9       Plaintiff was next seen at the Prabhu clinic on December 12, 2007, at which time it was

10  reported that he had been suffering from asthma for four months.  It was noted that he was treated

11  for shortness of breath in 2006 following bronchitis and was hospitalized at University Medical

12  Center in December 2006 for severe shortness of breath and pneumonia.[1]  AR 229.  Dr. Prabhu

13  noted that Plaintiff reported that he was short of breath at rest, and gets short of breath on minimal

14  exertion.  "He cannot walk, climb steps or lift heavy objects."  Plaintiff stated that he was having

15  frequent asthma attacks.  The doctor noted that "[h]e uses several albuterol inhaler puffs during the

16  daytime and uses albuterol in SVN treatment anywhere between three to four times a night in

17  addition to his controller medications that include Advair and prednisone."  AR 229.  Dr. Prabhu

18  prescribed additional medication to the Plaintiff.  AR 231.  Plaintiff reported on January 18, 2008

19  that his asthma was now under a little better control.  He was experiencing chest tightness and

20  wheezing for which the doctor prescribed additional medication.  AR 233.  Plaintiff was seen by a

21  physician's assistant on February 7, 2008, complaining of persistent cough with congestion for four

22  or five days.  AR 236.  He was not in acute distress.  AR 237.  The evaluation of a chest x-ray

23  taken on November 28, 2007 revealed no acute abnormalities.  AR 238.

24       Plaintiff was seen at Fremont Medical Center on April 1, 2008 and again on June 23, 2008

25  for acute bronchitis and extrinsic asthma.  AR 183-188.

26  . . .

27

28       [1] Medical records for these earlier hospitalization are not part of the administrative record.

5

Plaintiff was next seen by a physician at the Prabhu clinic on August 20, 2008 for a refill of asthma prescriptions.  He had no complaints at that time, was not in acute distress and his lungs were clear to auscultation bilaterally.  He was scheduled for follow-up in eight weeks.  AR 239-41.  Plaintiff returned on October 16, 2008 at which time he reported that his chest was tight, he was wheezing and was finding it hard to breath.  He was having an asthma attack.  AR 242.  On physical examination, he was noted to be in moderate distress.  Rare rhonchi were heard on auscultation and wheezes were noted with prolongation of expiratory phase.  AR 243.

Plaintiff was seen again by Dr. Prabhu on November 7, 2008 at which time he was diagnosed with severe asthma.  AR 245.  Dr. Prabhu noted that Plaintiff had run out of all of his medications[2] and was having severe shortness of breath with chest tightness and wheezing.  Id.  On physical examination, he was found to be in moderate distress.  His lungs were noisy with rhonchi and wheezes on auscultation.  AR 246.  Dr. Prabhu stated under "Plan," that he would treat Plaintiff with subcutaneous Brethine and IM Dep-Medrol.  He was given some prescription for predisone and samples of Advair.  Dr. Prabhu stated that he tried to arrange to get Xolair through the company policy.  AR 247.   He scheduled Plaintiff for follow-up in one month or sooner if needed.  AR 248.

Plaintiff was admitted to University Medical Center on January 6, 2009 after being involved in a motor vehicle accident in which he apparently sustained minor injuries.  AR 189-194.  While in the hospital, his asthma condition was also evaluated and he was given a small-volume nebulizers as well as oxygen.  AR 191.

Plaintiff was admitted to Mountainview Hospital and Medical Center in April 2009 for complaints of severe shortness of breath for 24 hours.  AR 265-282.  While in the hospital he was evaluated for ischemia.  His discharge diagnoses were: (1) Asthma exacerbation, (2) slight troponin elevation, (3) leukoctyosis secondary to steroids, (4) left lower lobe pneumonia, (5) probable chronic obstructive pulmonary disease, rule out fungal allergic lung disease with ASPA.  AR 265.

---

[2] This situation would appear to correspond with Plaintiff's loss of employment and health insurance.

On May 18, 2009, Dr. Prabhu made the following Chart Note:

> Mr. Erik Stonebraker was seen today in our office with severe persistent asthma. This is in spite of the fact that he is on maximum medical therapy including Xolair, prednisone, Advair, and ProAir. We feel that the patient is totally and permanently disabled from severe persistent asthma.

AR 249.

Plaintiff continued to receive treatment for his asthma and other upper respiratory conditions at the Guadalupe Medical Centers from January 2010 through August 2010, AR 312-15, and Canyon Gate Medical Group from October 2010 through May 2011. AR 319-52.

A State agency medical consultant, A. Ahmed, M.D., prepared a physical residual functional capacity assessment of Plaintiff on April 1, 2010, which was based on the doctor's review of the records. Dr. Ahmed stated that Plaintiff could occasionally lift or carry 10 pounds, frequently lift or carry less than 10 pounds, could stand and/or walk with normal breaks at least 2 hours in an 8-hour workday, and could sit with normal breaks for 6 hours in an 8-hour work day. He also stated that Plaintiff's ability to push and/or pull was unlimited other than as shown for his lift and carry ability. He stated that Plaintiff could occasionally climb ramps or stairs, and could occasionally balance, stoop, and kneel, but could never crouch or crawl. Dr. Ahmed noted no manipulative or visual limitations. Under environmental limitations, he stated that Plaintiff had no limitations to extreme heat, wetness or vibrations. He was required to avoid concentrated exposure to extreme cold and humidity, and was to avoid even moderate exposure to hazards such as heights and machinery. Dr. Ahmed did not check any limitation regarding fumes, odors, dusts, gases, or poor ventilation. AR 299-303.

A second physical residual functional capacity assessment was prepared by State agency medical consultant Karyn Doddy, M.D. on June 30, 2010. AR 304-311. Dr. Doddy's assessment varied from that of Dr. Ahmed in that she stated Plaintiff could occasionally lift 20 pounds and could frequently lift 10 pounds. AR 305. She also stated that Plaintiff could stand and walk up to 4 hours in an 8 hour day. Id. She found that Plaintiff could frequently balance. AR 306. Under environmental limitations, Dr. Doddy stated that Plaintiff should avoid concentrated exposure to extreme cold, extreme heat, wetness, and humidity. He should avoid even moderate exposure to

1    fumes, odors, dusts, gases, poor ventilation etc., and to hazards such as machinery or heights.

2    Plaintiff had no limitations to noise or vibration.  AR. 308.  Dr. Doddy stated that she had reviewed

3    Dr. Prabhu's 5/18/07 (sic) source statement regarding Plaintiff's physical capacity, but disagreed

4    with it.  Dr. Doddy stated: "He remains a strong patient advocate, but objective evidence presented

5    supports claimant's ability to function within the limits of this RFC."  AR 310.

6                     **3.      Testimony of Vocational Expert.**

7            Robin Scher, a vocational expert (VE) testified at the August 3, 2011 hearing.  She testified

8    that Plaintiff's past work included indexer, which is like a file clerk.  It has Dictionary of

9    Occupational Title (DOT) number 206.387-034.  The VE stated that it is light level work and has

10   an SVP (Specific Vocational Preparation) of 3.  Plaintiff worked as real estate clerk, DOT 219.362-

11   046, which is a sedentary job and has an SVP of 5.  Plaintiff worked as a property manager, DOT

12   169.167-034.  The VE testified that this is customarily performed at the sedentary level, but as

13   performed by Plaintiff was light work.  It had a customary SVP of 7, but the VE reduced it to 6 as it

14   was performed.  Plaintiff also worked as a music teacher, DOT 152.021-010, which is customarily

15   performed as light work, but was performed by Plaintiff as sedentary work.  It had an SVP of 7.

16   The VE noted that during the hearing, Plaintiff testified that he worked as a data entry clerk, DOT

17   203.582-054, which is sedentary work and has a SVP of 4.  AR 53-54.

18           The ALJ asked Ms. Scher to consider an individual who can lift 10 pounds, sit for six hours

19   in an eight hour day, and stand and walk for two hours in an eight hour day.  The individual must

20   work in a job that has low exposure to dust and industrial pollutants and requires minimal talking.

21   The ALJ asked whether such an individual would be able to perform any of Plaintiff's past work.

22   The VE responded that the individual could perform Plaintiff's past work as a data entry clerk and

23   music teacher.  AR 54.  Plaintiff's counsel asked Ms. Scher whether the individual could perform

24   these jobs if in addition to the ALJ's hypothetical, the individual would need three to four

25   additional breaks of 10 to 15 minutes each during the work day.  Ms. Scher responded no.  Id.

26           **C.      Administrative Law Judge's July 8, 2011 Decision.**

27           The ALJ applied the five-step sequential evaluation process established by the Social

28   Security Administration in determining whether Plaintiff was disabled.  The ALJ found that

Plaintiff met the insured status requirements of the Social Security Act through September 30, 2010.  He also found that Plaintiff had not engaged in substantial gainful activity since July 1, 2008, the alleged onset date of his disability.  AR 30.

At step two, the ALJ found that Plaintiff had the following severe impairment: Asthma with obstructive pulmonary disease (20 CFR 404.1520(c)).  The ALJ also noted that Plaintiff is mildly obese, which was not itself a severe impairment.  He stated, however, that Plaintiff's obesity was considered in conjunction with his other impairments in determining the severity and limiting effect of the combination of impairments.  AR 30.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).  AR 30.  In making this finding, the ALJ noted Plaintiff's medical office treatment records for acute asthma exacerbations as well as his hospitalization in April 2009 for acute exacerbation of his asthma.  The ALJ stated that "[t]he pulmonary function tests of record show signs of moderate obstructive airways disease, but the validity of the tests have been compromised by findings of a lack of proper maneuvers." AR 30.  The ALJ further noted that recent medical records indicated that Plaintiff had not required emergency room or doctor office treatment for acute exacerbations of his asthma.  The ALJ noted that "he has been treated with Prednisone and has reported intermittent use of a nebulizer at home, varying from four to five times a day to three times daily with no indication that such usage has been consistent or that use of inhalers with a holding chamber such as an AeroChamber has been contraindicated."  AR 30-31.  The ALJ further noted that Plaintiff indicated at one point he was using the nebulizer at night, "which would not impact on his ability to work directly."  AR 31.

Prior to step four, the ALJ found that Plaintiff had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except sit for six hours in an eight hour day with normal breaks, stand and walk for two hours in an eight hour day, and low dust and pollution free environment with no more than minimal talking.  AR 31.  In making this finding, the ALJ summarized Plaintiff's hearing testimony regarding his daily activities and limitations, including his testimony that he stopped working in May 2008 because the company went out of

business and that he applied for other work and "would have continued to work, if someone would have hired him." AR 31-32. The ALJ stated that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms. The ALJ found, however, that claimant's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent they were inconsistent with his determination of Plaintiff's residual functional capacity. AR 32.

The ALJ stated that "[a]s outlined above the claimant emphasized that he would have continued working if he could have found a job, but the ability to perform work that exists in the national economy, not availability of a specific job for the claimant or the hiring practices of employers, is at issue in this case." AR 32. The ALJ again noted that Plaintiff's testimony that he uses his nebulizer three to four times a day was in contrast to Dr. Prabhu's December 2007 report that he used the nebulizer machine at night. Id. The ALJ further stated that the current treating source, Canyon Gate Medical Group, noted intermittently that the claimant reported use of the nebulizer three to four times a day without mentioning use during the day or night. The same source indicated that while Plaintiff consistently reported breathing problems, the physician repeatedly found on examination since October 2010 that Plaintiff was not in pulmonary distress and his lungs were clear. The ALJ stated: "Indeed, during this period, the claimant indicated his pulmonary problems had improved and at one point he had been nearly 100% normal. *Id.* The claimant's subjective complaints including his assertion of needing nebulizer treatments three to four times during the day are not wholly credible." AR 32.

The ALJ discussed Dr. Prabhu's chart note dated May 17, 2009 that Plaintiff was completely disabled and noted that the State agency medical consultant disagreed with it. AR 32. The ALJ stated that "[g]iven the claimant's admissions at the hearing, and Dr. Prahbu's (sic) note of the limitations the claimant reported in December 2007, little weight can be given to this broad conclusory statement of disability, especially when the claimant was stable and in no need of intense medical treatment of episodes of acute asthma exacerbation." AR 32-33.

At step four, the ALJ concluded that Plaintiff was capable of performing his past work as a data entry clerk (DOT 203.582-054). In so holding, the ALJ relied on the vocational expert's

1  testimony that a person with Plaintiff's residual functional capacity could perform this work.  AR

2  33.    The ALJ therefore concluded that Plaintiff had not been under a disability at any time from

3  July 1, 2008 through the date of his decision.  AR 33-34.

**DISCUSSION**

4

5  **I.      Standard of Review**

6          A federal court's review of an ALJ's decision is limited to determining only (1) whether the

7  ALJ's findings were supported by substantial evidence and (2) whether the ALJ applied the proper

8  legal standards.  *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); *Delorme v. Sullivan,* 924

9  F.2d 841, 846 (9th Cir. 1991).  The Ninth Circuit has defined substantial evidence as "more than a

10  mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind

11  might accept as adequate to support a conclusion."  *Woish v. Apfel*, 2000 WL 1175584 (N.D. Cal.

12  2000) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)); *see also Lewis v. Apfel*,

13  236 F.3d 503 (9th Cir. 2001).  The Court must look to the record as a whole and consider both

14  adverse and supporting evidence.  *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Where the

15  factual findings of the Commissioner of Social Security are supported by substantial evidence, the

16  District Court must accept them as conclusive.  42 U.S.C. § 405(g).  Hence, where the evidence

17  may be open to more than one rational interpretation, the Court is required to uphold the decision.

18  *Moore v. Apfel*, 216 F.3d 864, 871 (9th Cir. 2000) (*quoting Gallant v. Heckler*, 753 F.2d 1450,

19  1453 (9th Cir. 1984)).  *See also Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The court

20  may not substitute its judgment for that of the ALJ if the evidence can reasonably support reversal

21  or affirmation of the ALJ's decision.  *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453,

22  1457 (9th Cir. 1995).

23          It is incumbent on the ALJ to make specific findings so that the court need not speculate as

24  to the findings.  *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981), citing *Baerga v.*

25  *Richardson*, 500 F.2d 309 (3rd Cir. 1974).  In order to enable the court to properly determine

26  whether the Commissioner's decision is supported by substantial evidence, the ALJ's findings

27  "should be as comprehensive and analytical as feasible and, where appropriate, should include a

28  . . .

statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Lewin*, 654 F.2d at 635.

In reviewing the administrative decision, the District Court has the power to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  In the alternative, the District Court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  *Id.*

## II.     Disability Evaluation Process

To qualify for disability benefits under the Social Security Act, a claimant must show that (a) he/she suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less that twelve months; and (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *see also* 42 U.S.C. § 423(d)(2)(A).  The claimant has the initial burden of proving disability.  *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995), *cert. denied*, 517 U.S. 1122 (1996).  If the claimant establishes an inability to perform his or her prior work, the burden shifts to the Commissioner to show that the claimant can perform a significant number of other jobs that exist in the national economy.  *Hoopai v. Astrue*, 499 F.3d 1071, 1074-75 (9th Cir. 2007).

Social Security disability claims are evaluated under a five-step sequential evaluation procedure.  *See* 20 C.F.R. § 404.1520(a)-(f).  *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001).  The claimant carries the burden with respect to steps one through four.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If a claimant is found to be disabled, or not disabled, at any point during the process, then no further assessment is necessary.  20 C.F.R. § 404.1520(a).  Under the first step, the Secretary determines whether a claimant is currently engaged in substantial gainful activity.  *Id.* § 416.920(b).  If so, the claimant is not considered disabled.  *Id.* § 404.1520(b).  Second, the Secretary determines whether the claimant's impairment is severe.  *Id.* § 416.920(c).  If

1   the impairment is not severe, the claimant is not considered disabled.  *Id*. § 404.152(c).  Third, the

2   claimant's impairment is compared to the "List of Impairments" found at 20 C.F.R. § 404, Subpt.

3   P, App. 1.  The claimant will be found disabled if the claimant's impairment meets or equals a

4   listed impairment.  *Id.* § 404.1520(d).  If a listed impairment is not met or equaled, the fourth

5   inquiry is whether the claimant can perform past relevant work.  *Id*. § 416.920(e).  If the claimant

6   can engage in past relevant work, then no disability exists.  *Id.* § 404.1520(e).  If the claimant

7   cannot perform past relevant work, the Secretary has the burden of proof at the fifth and final step

8   to demonstrate that the claimant is able to perform other kinds of work.  *Id.* § 404.1520(f).  If the

9   Secretary cannot meet his or her burden, the claimant is entitled to disability benefits.  *Id.* §

10   404.1520(a).

11   **III.    Whether the ALJ Erred at Step Four of the Sequential Process.**

12   In this case, the ALJ determined at step four of the sequential process that Plaintiff had the

13   residual functional capacity to perform his past work as a data entry clerk.  In reaching this

14   conclusion, the ALJ rejected the credibility of Plaintiff's testimony regarding the severity of his

15   asthma symptoms and their debilitating effects.  The ALJ also rejected the May 18, 2009 opinion of

16   Plaintiff's treating physician Dr. Prabhu that Plaintiff is totally and permanently disabled due to his

17   severe asthma.

18   **A.    ALJ's Determination Regarding Plaintiff's Credibility.**

19   The ALJ cited three principal reasons for rejecting the credibility of Plaintiff's testimony

20   regarding the severity of his symptoms.  First, the ALJ cited Plaintiff's hearing testimony that his

21   employment ended in May 2008 because the company he was working for went out of business,

22   and that he applied for and would have taken another job if one had been offered to him.  Second,

23   the ALJ relied on Dr. Prabhu's December 12, 2007 office visit note in which he stated that Plaintiff

24   "uses several albuterol inhaler puffs during daytime and uses albuterol in SVN treatment anywhere

25   between three or four times during the night."  AR 229.  The ALJ found that this entry contradicted

26   Plaintiff's testimony in August 2011 that he took breathing treatments, i.e. used a nebulizer, several

27   times throughout the day.   Third, the ALJ relied on Plaintiff's medical treatment records since

28   . . .

13

October 2010 which indicated that Plaintiff was not in pulmonary distress, his lungs were clear, and his pulmonary condition had improved.

Where there is no affirmative evidence showing that claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony regarding the severity or limiting effects of his symptoms must be clear and convincing. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009), citing *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F. 3d 595, 599 (9th Cir. 1999). The ALJ must specifically identify what testimony is credible and what testimony or evidence undermines the claimant's complaints. *Id.*

In *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005), the court further states:

> In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain. *See Bunnell v. Sullivan,* 947 F.2d 341, 345 (9th Cir. 1991). The rationale for this restriction is that pain testimony may establish greater limitations than can medical evidence alone. *See* SSR 96–7p (1996). In determining credibility, an ALJ may engage in ordinary techniques of credibility evaluation, such as considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony. *See Tonapetyan v. Halter,* 242 F.3d 1144, 1148 (9th Cir. 2001). Additionally, Social Security Ruling 88–13 lists a number of factors the ALJ may consider:
>
> > 1. The nature, location, onset, duration, frequency, radiation, and intensity of any pain; 2. Precipitating and aggravating factors (e.g., movement, activity, environmental conditions); 3. Type, dosage, effectiveness, and adverse side-effects of any pain medication; 4. Treatment, other than medication, for relief of pain; 5. Functional restrictions; and 6. The claimant's daily activities.
>
> *Bunnell,* 947 F.2d at 346 (quoting SSR 88–13 (1988)) (superceded by SSR 95–5p (1995)); *see also Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996).

Plaintiff argues that the ALJ's reliance on Plaintiff's statement that he applied for work after his employment ended in May 2008 and would have worked if he had received a job offer, was taken out of context and does not support a finding that Plaintiff's testimony regarding the severity of his asthma symptoms was not credible. The Court agrees.

. . .

The ALJ cited that part of Plaintiff's testimony in which he stated that he looked for other office jobs and would have continued to work if someone had hired him. AR 31. The ALJ further stated that "the claimant emphasized that he would have continued working if he could have found a job . . . ." AR 32. He also characterized this statement as an "admission." Id. The ALJ did not discuss Plaintiff's other testimony relating to his ability or inability to work.

In response to the ALJ's initial question as to why he stopped working, Plaintiff stated "The realtor I was working for, his company went under and my asthma was getting worse so I just, wasn't able to work, didn't have insurance, didn't go get, wasn't able to get medicine or anything and then we applied, me and my wife applied for Medicaid . . . ." AR 43. In answer to the ALJ's question whether he thought he could hold a job now, the Plaintiff said no and further stated: "I constantly do have to do breathing treatments. My asthma attacks come whenever, all day long . . . ." AR 44-45. Plaintiff went on to describe in some detail the problems he would have in performing work duties. Id. Later in the hearing, Plaintiff's attorney asked him whether he believed he could have performed the duties of the jobs he applied for if he had been hired. Plaintiff answered "No, I wouldn't have been able to. I'd have let them know that I had asthma and I do breathing treatments but sooner or later it would have caught up with me." AR 51.

The medical records show that Plaintiff was experiencing significant asthma symptoms by December 12, 2007. AR 229. He continued to work, however, until May 2008. In August 2008, Plaintiff was not in acute distress and his lungs were clear to auscultation bilaterally. AR 239-240. On October 16, 2008, he was experiencing an asthma attack and was finding it hard to breath. AR 242. On November 7, 2008, he was experiencing severe shortness of breath and was in moderate distress. AR 244-246. His symptoms were so severe in April 2009 that he was hospitalized for a period of four days. AR 265-282. As of May 18, 2009, Dr. Prabhu concluded that Plaintiff was suffering from severe, persistent asthma and was totally and permanently disabled. AR 249. Plaintiff did not apply for disability benefits until June 2009, by which time the records indicate his asthma symptoms were significantly worse than at the time he ceased working in May 2008.

. . .

. . .

15

In *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007), the court stated:

> It does not follow from the fact that a claimant tried to work for a short period of time and, because of his impairments, *failed*, that he did not then experience pain and limitations severe enough to preclude him from *maintaining* substantial gainful employment. Indeed, we have suggested that similar evidence that a claimant tried to work and failed actually *supported* his allegations of disabling pain. *See Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) . . . .

The court further stated that where an individual attempts to work only because of extreme economic necessity, "it is at least as likely that the claimant tried to work in spite of his symptoms, not because they were less severe than alleged." *Id.*, 504 F.3d at 1039.

Plaintiff's effort to find work after he was terminated in May 2008, combined with the medical records showing that he was doing fairly well in late August 2008, would reasonably support a finding that he was still able to work at that time. The medical records also show, however, that Plaintiff's asthma worsened in the fall of 2008 and into the spring of 2009. These records support Plaintiff's testimony regarding the severity of his symptoms after November 2008. Plaintiff's testimony also indicates that he pursued other employment because of economic necessity which is not inconsistent with his having experienced severe asthma symptoms at that time or later during the progression of his illness. The ALJ's reliance on Plaintiff's effort to obtain other employment to discount the credibility of his testimony regarding the severity of his symptoms is not supported by the record.

The ALJ's reliance on Dr. Prabhu's December 12, 2007 office visit note that Plaintiff was only using the nebulizer at nighttime to discount his hearing testimony also appears to be taken out of context of the record as a whole. The medical records show that Plaintiff experienced a flare-up or increase in the severity of his asthma symptoms in November and December 2007. He was still working at that time, however, and his use of inhalers during the daytime and a nebulizer at nighttime may well have been consistent with the nature and level of his symptoms at that time. As stated above, however, the records also demonstrate an increase in Plaintiff's asthma symptoms in the fall of 2008 and into the spring of 2009. Plaintiff testified at the hearing that he takes breathing treatments, i.e., uses a nebulizer, throughout the day and evening. AR 49. He did not specify, however, for what period of time he had been taking breathing treatments at that frequency. There

1   is no indication in the Prabhu clinic records after the December 12, 2007 regarding the time or

2   frequency at which Plaintiff performed breathing treatments.

3        The ALJ stated that the records from the current treating source indicates that Plaintiff

4   reported use of a nebulizer three or four times a day without mentioning a use during the day or the

5   night. AR 32, citing Canyon Springs Records. The ALJ also states "that the same source has

6   indicated while claimant was noted to be reporting persistent breathing problems, he was repeatedly

7   found on examination since October 2010 to be in no pulmonary distress and to have clear lungs."

8   Id. The Court has reviewed those records, which are hand-written office visit notations. The

9   records do not provide a coherent narrative description of Plaintiff's symptoms, physical

10  examination findings or the physician's assessments. *See* AR 316-339. While the Court cannot

11  state that the ALJ's interpretation of those records is incorrect, it also cannot confirm his

12  interpretation based on its own review of the records. Furthermore, the ALJ may not reject a

13  claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the

14  alleged severity of pain. *Burch v. Barnhart*, 400 F.3d at 680. This prohibition should be even more

15  applicable when the medical records relied on by the ALJ are themselves ambiguous, incomplete or

16  indecipherable.

17       This Court therefore finds that the ALJ failed to set forth clear and convincing reasons for

18  rejecting the Plaintiff's testimony regarding the severity of his symptoms. That said, the record

19  also does not clearly demonstrate at what point in time Plaintiff's symptoms reached that level of

20  severity to support his disability claim.

21       **B.      The ALJ's Rejection of Dr. Prabhu's Opinion that Plaintiff Was Disabled.**

22       Plaintiff's treating physician, Dr. Prabhu, opined on May 18, 2009 that Plaintiff "is totally

23  and permanently disabled from severe persistent asthma." AR 249. Dr. Prabhu did not state when

24  Plaintiff became totally disabled. Nor did he elaborate on the basis for his opinion, other than to

25  state that Plaintiff was "on maximum medical therapy." Id. In rejecting Dr. Prabhu's disability

26  opinion, the ALJ stated:

27              Given the claimant's admissions at the hearing, and Dr. Prabhu's
                note of the limitations the claimant reported in December 2007, little

28

17

1
2

> weight can be given to this broad conclusory statement of disability,
> especially when the claimant was stable and in no need of intense
> medical treatment of episodes of acute asthma exacerbation.

3     AR 33-33.

4     The ALJ did not expressly give more weight to the opinions of the reviewing State agency

5 physicians who provided physical residual functional capacity assessments.  The ALJ did, however,

6 find that Plaintiff had a residual functional capacity that, with certain additional limitations, was

7 generally in accord with the assessments of the State agency physicians.

8     "Generally, a treating physician's opinion carries more weight than an examining

9 physician's, and an examining physician's opinion carries more weight than a reviewing

10 physician's."  *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001).   If the treating

11 physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is

12 well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

13 inconsistent with the other substantial evidence," it should be afforded more weight.  20 CFR

14 416.927(d)(2).  The ALJ need not accept an opinion of a treating physician, however, if it is

15 conclusory and not supported by clinical findings. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th

16 Cir. 1992).  *See also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not

17 accept the opinion of any physician, including a treating physician, if that opinion is brief,

18 conclusory, and inadequately supported by clinical findings.")  If the treating physician's opinion is

19 contradicted by another physician, then the treating physician's opinion can only be rejected by the

20 Secretary for specific and legitimate reasons, supported by substantial evidence in the record for so

21 doing. *Lester v. Charter*, 81 F.3d 821, 831 (9th Cir. 1996).

22     The ALJ's cited reasons for according little weight to Dr. Prabhu's disability opinion do not

23 provide legitimate grounds for rejecting his opinion.  The medical evidence supports the finding

24 that Plaintiff's asthma condition continued to significantly worsen after August 2008.  Therefore,

25 while Dr. Prabhu's opinion that Plaintiff was totally and permanently disabled may not have been

26 applicable to his condition in May-August 2008, it could reasonably apply to his condition on May

27 18, 2009 and for some time period prior thereto.  Likewise, Plaintiff's limitations or treatment

28 needs in December 2007 are not particularly relevant to his condition in May 2009, in the face of a

record showing that his condition worsened.  On the other hand, Dr. Prabhu's May 18, 2009

opinion that Plaintiff was totally and permanently disabled was both broad and conclusory.  Dr.

Prabhu did not provide an onset date for Plaintiff's alleged total disability and he did not attempt to

explain or support his opinion by any discussion of Plaintiff's level of symptoms or how that

impacted his activities of daily living or ability to perform certain work tasks.  It was, therefore, not

incumbent on the ALJ to accept that opinion.

The decision of the ALJ should be reversed because he failed to provide clear and

convincing reasons for rejecting the credibility of Plaintiff's testimony regarding the severity of his

symptoms.  Similarly, the ALJ's cited reasons for giving little weight to the disability opinion of

Plaintiff's treating physician are not legitimate grounds for rejecting his opinion.

### IV.   Whether This Case Should Be Remanded for An Award of Benefits or for Further Administrative Proceedings to Determine Whether Plaintiff is Disabled.

There is a split of authority in the Ninth Circuit in regard to whether an application for

social security disability benefits should be remanded for an award of benefits or further

administrative proceedings when the court determines that the ALJ failed to provide legally

sufficient reasons for rejecting the claimant's testimony and his treating physician's opinions.

In *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004), the court stated as follows:

> Remand for further administrative proceedings is appropriate if
> enhancement of the record would be useful. *See Harman,* 211 F.3d at
> 1178.  Conversely, where the record has been developed fully and
> further administrative proceedings would serve no useful purpose,
> the district court should remand for an immediate award of benefits.
> *See Smolen v. Chater,* 80 F.3d 1273, 1292 (9th Cir. 1996); *Varney v.
> Secretary of Health and Human Services,* 859 F.2d 1396, 1399 (9th
> Cir. 1988).  More specifically, the district court should credit
> evidence that was rejected during the administrative process and
> remand for an immediate award of benefits if (1) the ALJ failed to
> provide legally sufficient reasons for rejecting the evidence; (2) there
> are no outstanding issues that must be resolved before a
> determination of disability can be made; and (3) it is clear from the
> record that the ALJ would be required to find the claimant disabled
> were such evidence credited. *Harman,* 211 F.3d at 1178; *see also
> McCartey v. Massanari,* 298 F.3d 1072, 1076-77 (9th Cir. 2002);
> *Smolen,* 80 F.3d at 12920.

> Where the *Harman* test is met, we will not remand solely to allow the
> ALJ to make specific findings regarding excessive pain testimony.
> Rather, we take the relevant testimony to be established as true and

1
2
3
4

remand for an award of benefits. *Varney,* 859 F.2d at 1401; *see also Reddick v. Chater,* 157 F.3d 715, 728 (9th Cir. 1998) (quoting *Varney*); *Lester,* 81 F.3d at 834 (same); *Swenson v. Sullivan,* 876 F.2d 683, 689 (9th Cir. 1989) (same); *but cf. Connett v. Barnhart,* 340 F.3d 871, 876 (9th Cir. 2003) (holding that the court has flexibility in crediting petitioner's testimony if substantial questions remain as to her credibility and other issues must be resolved before a determination of disability can be made).

5
6
7
8
9
10

The court in *Benecke* held that the ALJ's rejection of the claimant's testimony regarding the severity of her fibromyalgia symptoms and the opinions of her treating physicians regarding her physical limitations was in error.  Because the vocational expert testimony established that the claimant was unable to perform a sedentary job based on her credited symptoms and physical limitations, the court held that remand for administrative proceedings would serve no useful purpose and was unwarranted.  *Id.* 379 F.3d at 596.

11
12

In *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003), however, another Ninth Circuit panel stated as follows:

13
14
15
16
17
18
19
20
21

. . . [W]e are not convinced that the "crediting as true" doctrine is mandatory in the Ninth Circuit.  Despite the seemingly compulsory language in *McCartey* and *Swenson,* there are other Ninth Circuit cases in which we have remanded solely to allow an ALJ to make specific credibility findings.  In *Dodrill,* for example, our court specifically remanded for the ALJ to "articulat[e] specific findings for rejecting [the claimant's] pain testimony and the testimony of lay witnesses." 12 F.3d at 919.  In *Nguyen v. Chater,* where the ALJ failed to consider the claimant's testimony with regard to his asthma, our court remanded with the specific proviso that "[i]t is not our intent ... to preclude the ALJ from reopening the hearing to receive additional evidence," including, presumably, evidence regarding the claimant's credibility. 100 F.3d 1462, 1466-67 (9th Cir.1996).  *See also Byrnes v. Shalala,* 60 F.3d 639, 642 (9th Cir.1995) ("We therefore remand this case to the ALJ for further findings evaluating the credibility of [the claimant's] subjective complaints....").

22
23
24
25
26
27

An arguable distinction between *Benecke* and *Connett* is that in *Benecke,* there was no basis in the record to support the ALJ's rejection of the claimant's testimony regarding the severity of her fibromyalgia symptoms, whereas in *Connett* the record arguably contained evidence that would have supported the ALJ's decision if he had cited that evidence in support of his decision.  In any event, the conflict in the Ninth Circuit case law on this issue has not yet been resolved.  *See Vasquez v. Astrue*, 572 F.3d 586, 593 (9th Cir. 2009).

28
. . .

In *Esposito v. Astrue*, 2012 WL 1027601, *8 (E.D.Cal. 2012), the district court commented on the Ninth Circuit conflict as follows:

> District courts are thus commanded by the *Benecke* line of cases to remand for payment of benefits if the three-part test discussed above is met, but simultaneously instructed by *Connett* that they need not remand for payment of benefits under the same circumstances. As the *Benecke* line of authority appears to require this court to remand for payment of benefits if the precedent conditions are met, and the *Connett* line of cases merely permits, but does not require, this court to remand for further proceedings in the same circumstances, this court seems bound to apply the *Benecke* line of cases. Indeed, *Connett* does not explain how this court should decide whether to apply the credit-as-true rule, but merely suggests that we have flexibility in choosing which claimants receive benefits on remand when the same precedent conditions are met. Such an approach invites arbitrary decision-making and impermissible re-weighing of the medical evidence by this court. Thus, until the Ninth Circuit resolves this issue en banc, this court will follow the *Benecke* test.

*See also Wilson v. Astrue*, 2011 WL 609801, *11 (D.Or. 2011) (noting that decisions after *Connett* decline to endorse that case's flexible approach and instead frame the credit-as-true rule as encouraged if not altogether mandatory).

In this case, the record is unclear as to when Plaintiff's asthma symptoms reached the level of severity and debilitating effects that he described during his testimony on August 3, 2011. The record supports a finding that his symptoms had not yet reached a disabling level when he stopped working in May 2008 or as of the alleged onset date of July 1, 2008. His symptoms were arguably disabling by May 13, 2009 when Dr. Prabhu declared him totally and permanently disabled. Based on these uncertainties, remand for further hearing is appropriate to determine if and when Plaintiff's asthma symptoms reached the level of severity that precluded him from performing his past sedentary work or other available work in the national and local economy.

## CONCLUSION

The ALJ failed to provide clear and convincing reasons for rejecting the credibility of Plaintiff's testimony regarding the severity of his asthma symptoms. Similarly, the ALJ's cited reasons for giving little weight to the disability opinion of Plaintiff's treating physician are not legitimate grounds for rejecting his opinion. The ALJ's determination that Plaintiff was not disabled at any time from July 1, 2008 through the date of his decision is not supported by

substantial evidence and should be reversed, and this matter remanded for further hearing.
Accordingly,

### **RECOMMENDATION**

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Remand and/or Reversal (#14) be **granted** and Defendant's Cross Motion to Affirm (#15) be **denied** and that this case be remanded to the Commissioner of Social Security for further hearing consistent with this recommendation.

### **NOTICE**

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time.  *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 5th day of June, 2014.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge

22